# EXHIBIT 1

| CHARGE OF DISCRIMINATION | AGENCY  ☐ FEPA  X EEOC | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | | |

STATE OR LOCAL AGENCY: Philadelphia Commission on Human Relations

| NAME (Indicate Mr., Ms., Mrs.)  Carolyn Prager | HOME TELEPHONE NUMBER (Include Area Code) |
|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP  Philadelphia, PA 19102 | DATE OF BIRTH |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME  LabCorp; Laboratory Corporation of America Holdings; Lab. Corp. of America Holdings | NUMBER OF EMPLOYEES, MEMBERS  > 100 | TELEPHONE (Include Area Code)  (908) 526-2400 |
|---|---|---|
| STREET ADDRESS  69 First Avenue | CITY, STATE AND ZIP  Raritan, NJ 08869 | COUNTY  Somerset |

CAUSE OF DISCRIMINATION (Check appropriate box(es))
☐ Race   ☐ Color   X Sex   ☐ Religion   ☐ National Origin
X Retaliation   ☐ Age   X Disability   ☐ Other (Specify)

DATE DISCRIMINATION TOOK PLACE
Earliest            Latest 01/31/2023

**The Particulars Are:**

A.   1.   Relevant Work History

I was hired by Respondents on or about June 27, 2005. I last held the position of Senior Marketing Executive. I last reported to Stephanie Hanshaw (female), Regional Manager Business Development. Hanshaw reported to Kenneth Ryker (male), Associate Vice President, Area Business Development. Ryker reported to Carl Epple (male), Vice President Southern Subdivision. Epple reported to Bill Haas (male), Senior Vice President, Northeast Division. I worked out of my home office in Philadelphia, Pennsylvania.

Respondents treated me in a more hostile and dismissive manner because of my sex, my disability, my complaints of sex discrimination, and/or my seeking reasonable accommodations for my disability. I complained of sex discrimination, and Respondents failed to remedy or prevent the sex discrimination to which I was subjected. After I complained of sex discrimination and Respondents were aware of my disability, Respondents subjected me to a hostile work environment, placed me on a PIP, and terminated my employment the day I returned to work from a medical leave of absence because of my sex and/or my disability and/or my sex discrimination complaints and/or my seeking reasonable accommodations for my disability. Respondents retained less qualified male and/or nondisabled and/or noncomplaining employees and/or employees who had not sought reasonable accommodations for a disability in positions for which I was more qualified.

I consistently demonstrated positive performance and dedication to Respondents. I performed my duties in a highly-competent manner and received positive feedback.

| X I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (when necessary for State and Local Requirements)  I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.  Date: 5/31/23   Charging Party (Signature): Carolyn Prager | SIGNATURE OF COMPLAINANT  SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day Month, and year) |

EEOC Charge of Discrimination
Initials of Charging Party – CP

2. **Harm Summary**

I have been discriminated against because of my sex (female) and my disability (including history of and regarded as) and retaliated against because of my sex discrimination complaints and my seeking reasonable accommodations for my disability. Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following:

(a) In or about October 2017, I began reporting directly to Ryker.

(b) Ryker had no role in my being hired at Respondents.

(c) I expressed my desire to grow in my position and be promoted.

(d) In 2019, Respondents failed to transfer me to a more desirable Senior Marketing Executive position, which included an opportunity for greater revenue, growth, and compensation. I was qualified for the position and expressed my interest in the position. Ryker told me not to apply for the position, as he had already selected who he wanted in the position. Instead of transferring me to the position, Ryker promoted Paul Klein (male) to the more desirable Senior Marketing Executive, despite Klein having had only been employed with Respondents for six (6) months, compared to my then fourteen (14) years of service, and having held a lower level position than I held. I was more qualified for the position than the male employee who was promoted to the position.

(e) I received no explanation, including the selection criteria, as to why I was not transferred to the Senior Marketing Executive position and a less qualified male employee was promoted instead.

(f) Respondents failed to transfer me to the more desirable Senior Marketing Executive position because of my sex.

(g) I was assigned less desirable accounts and territories while male employees, including Klein, were assigned more desirable accounts and territories.

(h) Ryker told me that he would rebalance the accounts and territories, but the same never happened, despite my requests.

(i) In March 2020, I applied for the posted Assistant Manager position. I was qualified for the position.

(j) In March 2020, following the above, in a meeting with Ryker, Respondents failed to promote me to Assistant Manager. The stated reason was that Respondents were no longer hiring for an Assistant Manager.

(k) In 2020, I began reporting directly to Hanshaw and indirectly to Ryker.

(l) Hanshaw had no role in my being hired at Respondents.

(m) Ryker and Hanshaw were aware of my medical conditions, including my intermittent benign paroxysmal positional vertigo and neurology issues.

(n) Ryker and Hanshaw were aware that my medical conditions, including my intermittent benign paroxysmal positional vertigo and neurology issues, required me to take certain days off from work due to my symptoms and treatment of the same.

(o) In or about July 2021, in a meeting with Hanshaw, I complained that Klein (male) had

2

EEOC Charge of Discrimination
Initials of Charging Party – CP

been assigned more desirable accounts and territories than I had been assigned, while I was assigned less desirable accounts and territories, and that, despite Ryker's statements that he would rebalance the accounts and territories, the same had never happened. I stated that having less desirable accounts and territories negatively impacted my ability to hit my quota numbers. She stated that she would try to correct the issue as soon as possible.

(p) Between September and November 2021, in conversations with Hanshaw, when I asked her for an update regarding the rebalanced accounts and territories, she told me that she had spoken with Ryker, and Ryker stated that not all territories were created equal, and that Ryker refused to rebalance the accounts and territories.

(q) On November 8, 2021, in a phone call with Hanshaw, she told me that I had not hit my quota numbers for three (3) out of four (4) months. I stated that there were multiple Senior Marketing Executive employees who had not hit their quota numbers for the same number of months. She told me that Ryker told her to have this talk with me, and that I was the only employee not hitting quota in this division. She asked me to create a target list and plan to increase my numbers.

(r) On November 12, 2021, in an email to Hanshaw, I provided her with the requested target list and plan that I had created to increase my numbers.

(s) Hanshaw told me that she understood that certain of my accounts would not generate revenue for me or help me hit my quota.

(t) In 2021, despite the less desirable territories and accounts I was assigned, I exceeded my book of business quota in eight (8) out twelve (12) months at one hundred percent (100%), with five (5) of those months being over one hundred four percent (104%).

(u) My performance was unjustly criticized.

(v) On January 17, 2022, in a phone call with Hanshaw, I was placed on a Performance Improvement Plan ("PIP"). My performance did not warrant a PIP. The PIP contained goals that were unfeasible to complete in the timeframe provided. The PIP was scheduled to last ninety (90) days. Hanshaw told me that placing me on the PIP was Ryker's decision. When I stated that there were multiple employees who had not hit their numbers for several months, she responded that I was the only employee who had not hit their numbers. I reiterated that I had been assigned less desirable accounts and territories, which negatively impacted my ability to hit my quota numbers, while male employees, such as Klein, had been assigned more desirable accounts and territories.

(w) Respondents placed me on a PIP because of my sex and/or my disability.

(x) Male and/or nondisabled and/or noncomplaining employees were not placed on a PIP.

(y) I received no explanation, including the criteria, as to why I was placed on a PIP while male and/or nondisabled and/or noncomplaining employees were not.

(z) On February 16, 2022, in a phone call with Judi Ahrikenchikh (female), Human Resources, Employee Relations, I stated that I was placed on a PIP while other employees who had not hit their quota numbers were not. I complained that I had been assigned less desirable accounts and territories, which negatively impacted my ability to hit my quota numbers, while male employees, such as Klein, had been

3

EEOC Charge of Discrimination
Initials of Charging Party – CF

assigned more desirable accounts and territories. She told me that she would investigate my complaints.

(aa) On February 16, 2022, following the above, in an email to Ahrikenchikh, I complained of sex discrimination in connection with how I had been treated. I stated that Ryker had failed to transfer me to a more desirable territory, and told me that, instead of transferring me to the more desirable position, he had already selected "a male KAE who had only been with the company less than 6 months."

(bb) After I complained of sex discrimination, I was treated in an increasingly hostile and dismissive manner, differently and worse than before I had engaged in protected activity and differently and worse than how noncomplaining employees were treated.

(cc) On February 17, 2022, I went out of work on an FMLA-protected medical leave of absence due to the sex and disability discrimination and retaliation to which I was being subjected.

(dd) From February 17, 2022 through May 8, 2022, I was out of work on an FMLA-protected medical leave of absence.

(ee) The forms that were completed and submitted in connection with my medical leave of absence stated that my symptoms included ongoing fatigue, anxious mood, and pelvic floor disfunction.

(ff) In April 2022, I received phone calls from employees who told me that Human Resources was investigating my complaints, and that Ryker had called Nicholas Villa (male), Key Account Executive, and asked if he would speak on Ryker's behalf if necessary. I was told that Ryker also called James Cusick (male), Division Representative, and told him that I spoke with Human Resources and, now that Human Resources was involved, Cusick may have to provide justification as to why his numbers were so low and that Cusick may need to be placed on a PIP if his numbers did not improve.

(gg) On May 9, 2022, I returned to work from my medical leave of absence.

(hh) My performance was unjustly criticized.

(ii) I was ignored.

(jj) I was treated in a demeaning manner.

(kk) I was not given leadership opportunities, while Klein (male) was.

(ll) On May 31, 2022, in a meeting with Epple (Ryker's boss), I stated that I was concerned that Ryker was retaliating against me for complaining that I had been assigned less desirable accounts and territories, which negatively impacted my ability to hit my quota numbers, while male employees, such as Klein, had been assigned more desirable accounts and territories, and that I had been the only employee placed on a PIP. He told me that he would investigate my complaints.

(mm) On June 1, 2022, Hanshaw went out of work on maternity leave, and Respondents assigned me to directly report to Ryker, despite the complaints I made and despite having received no feedback regarding any investigation.

(nn) On June 27, 2022, in a meeting with Epple, which I understood to be a follow-up meeting to my complaints from May 31, 2022, he instead criticized my poor sales

4

EEOC Charge of Discrimination
Initials of Charging Party – CJ

numbers and repeatedly asked me why they dropped. I reiterated that I had been assigned less desirable accounts and territories, which negatively impacted my ability to hit my quota numbers, while male employees, such as Klein, had been assigned more desirable accounts and territories. I stated that, even though other employees did not hit their quota numbers, I was the only employee who was placed on a PIP. He stated that Cusick (male) was told in May 2022 that he may be placed on a PIP if his numbers did not improve, and he then resigned. I was never told that I might be placed on a PIP if my numbers did not improve. No one ever told me why I was placed on a PIP without given a warning while a male employee was given a warning without being placed on a PIP.

(oo) On June 27, 2022, following the above, in a phone call with Ahrikenchikh, I stated that I was upset by the meeting that I had with Epple and the lack of follow-up regarding my complaints. She stated that she did not know much about sales, and that I had to get updates from Ryker and Epple regarding my concerns. She stated that she was told that my territory had so much opportunity. When I asked for documentation regarding the same, she refused to provide it.

(pp) On June 28, 2022, in a meeting with Ryker, he criticized me for complaining about him to Epple and Human Resources, including complaining that he was retaliating against me, and told me that I should have gone directly to him with any issues I had. He told me that my PIP would be restarting on July 1, 2022.

(qq) On or about June 29, 2022, in a phone call with Ahrikenchikh, I stated that I was upset by the meeting that I had with Ryker, and that I was concerned about further retaliation from him since he criticized me for complaining about him, including my having complained that he retaliated against me. She again told me that I had to go to Ryker for any sales updates.

(rr) On or about June 30, 2022, I contracted COVID-19 and was out of work for approximately five (5) days.

(ss) I received no updates or any investigative report in connection with my sex discrimination and retaliation complaints.

(tt) On or about July 11, 2022, I began experiencing medical issues, including that my intermittent benign paroxysmal positional vertigo and neurology issues had worsened, which required my taking certain days off from work due to my symptoms and treatment of the same.

(uu) In or about July 2022, following the above, I informed Ryker that my intermittent benign paroxysmal positional vertigo and neurology issues had worsened, and that I needed time off from work to attend medical appointments and do required physical therapy treatments.

(vv) In August 2022, I was out of work several days due to my disability and treatment, of which Ryker was aware.

(ww) On August 17, 2022, in a meeting with Ryker, I was placed on a PIP, which was backdated to July 1, 2022. My performance did not warrant a PIP. The PIP was scheduled to last ninety (90) days.

(xx) Respondents placed me on a PIP because of my sex and/or my disability and/or my sex discrimination complaints.

(yy) Male and/or nondisabled and/or noncomplaining employees were not placed on a

5

EEOC Charge of Discrimination
Initials of Charging Party – *CP*

PIP.

(zz) I received no explanation, including the criteria, as to why I was placed on a PIP while male and/or nondisabled and/or noncomplaining employees were not.

(aaa) On August 31, 2022, in a phone call with Ryker, I stated that I would be requesting intermittent FMLA due to my medical conditions and treatments.

(bbb) On September 1, 2022, in an email from Ryker, he asked me questions about my intermittent FMLA leave and upcoming doctor's appointments.

(ccc) On September 20, 2022, I was approved for intermittent FMLA due to my disability.

(ddd) Between September 20, 2022 and October 31, 2022, I was out of work for several days in connection with my intermittent FMLA leave as an accommodation for my disability, of which Ryker was aware.

(eee) In or about October 2022, in a phone call with Ryker and Hanshaw, I again stated that I was continuing to have a difficult time reaching my quota due to the accounts and territory I was assigned. Ryker stated that he would remedy the issue and follow up with me.

(fff) Respondents failed to remedy the issue, and no one followed up with me regarding the same.

(ggg) On November 1, 2022, I went out of work on an FMLA-protected medical leave of absence due to my disability.

(hhh) From November 1, 2022 through January 4, 2023, I was out of work on a medical leave of absence. I received short term disability benefits through Respondents.

(iii) The forms that were completed and submitted in connection with my medical leave of absence stated that my symptoms included ongoing fatigue, anxiety, overactive bladder, and chronic pain.

(jjj) On January 4, 2023, I returned to work from my medical leave of absence.

(kkk) On January 4, 2023, on the day that I returned to work, in a phone call with Hanshaw, Ryker, and Mark Musser (male), Senior Employee Relations Partner, Respondents terminated my employment, effective immediately. The stated reason was that I did not complete the PIP.

(lll) On January 6, 2023, in a phone call with Musser, I stated that I had complained about Ryker's treatment of me, and how that differed from how male employees were treated, and that his treatment of me worsened after my complaints. He stated that he did not know anything about my complaints, and that I should have received a written summary from Ahrikenchikh. I stated that I had not received a written summary. He told me that he would speak with Ahrikenchikh and get back to me.

(mmm) On January 31, 2023, in a phone call with Musser, he stated that he was no longer able to discuss anything with me since I was no longer an employee. He said he spoke to Ahrikenchikh and she stated that she had provided some verbal updates to me.

(nnn) Respondents terminated my employment the day that I returned to work from my

6

EEOC Charge of Discrimination
Initials of Charging Party – CP

medical leave of absence.

(ooo) Respondents terminated my employment because of my sex and/or my disability and/or my engaging in protected activity and/or my seeking reasonable accommodations for my disability, including medical leaves of absence.

(ppp) Respondents subjected me to a hostile work environment because of my sex and/or my disability and/or my engaging in protected activity and/or my seeking reasonable accommodations for my disability, including medical leaves of absence.

(qqq) Before reporting to Ryker, I had no indication that my job was in jeopardy.

(rrr) Before reporting to Ryker, I had no disciplinary or performance issues.

(sss) Before I engaged in protected activity, I consistently received Meet Expectations performance review ratings.

(ttt) I was the only employee reporting to Hanshaw who was terminated effective January 4, 2023.

(uuu) I was the only disabled employee reporting to Hanshaw.

(vvv) I was the only employee reporting to Hanshaw who had sought reasonable accommodations for a disability.

(www) I was the only employee reporting to Hanshaw who had engaged in protected activity.

(xxx) At the time of my termination, the following employees reported to Hanshaw. I was more qualified to perform these employees' positions.

  i) Carolyn Prager (female), Senior Marketing Executive;
  ii) _____ (open position) (male), Senior Marketing Executive;
  iii) Ronald Root (male), Key Account Executive;
  iv) Jennifer Parker (female), Key Account Executive;
  v) Kimberly Ostrofsky (female), Key Account Executive;
  vi) Lisa O'Brien (female), Key Account Executive.

(yyy) Respondents failed to remedy or prevent the sex and disability discrimination and retaliation at Respondents.

(zzz) I had no opportunity to remain employed with Respondents.

(aaaa) Respondents replaced me with David Marshall (male). I was more qualified to perform my job duties and responsibilities and manage my direct reports than the noncomplaining, nondisabled, male employees who had not sought reasonable accommodations for a disability with whom Respondents replaced me.

(bbbb) Respondents' sex and disability discriminatory and retaliatory conduct and comments have caused me emotional distress.

(cccc) Respondents' sex and disability discriminatory and retaliatory conduct and comments constitute a continuing violation.

(dddd) Respondents' comments and conduct evidence a bias against female and/or disabled employees and/or employees who engage in protected activity and/or

7

EEOC Charge of Discrimination
Initials of Charging Party – CP

    employees who seek reasonable accommodations for a disability, including a medical leave of absence.

(eeee) I am aware of other female employees who have complained of sex discrimination at Respondents, including in connection with Ryker.

(ffff) Respondents' sex and disability discrimination and retaliation have caused me emotional distress.

(gggg) Respondents did not target or treat in the same way similarly-situated male and/or nondisabled and/or noncomplaining employees and/or employees who had not sought reasonable accommodations for a disability.

B. 1. Respondents' Stated Reasons

  (a) Respondents' stated reason for terminating my employment, that I did not complete the PIP, is pretext for sex and/or disability discrimination and/or retaliation because of my sex discrimination complaints and/or my seeking reasonable accommodations for my disability.

  (b) Respondents' stated reason for placing me on a PIP, my performance, is pretext for sex and/or disability discrimination.

  (c) Respondent provided no explanation for failing to promote me.

  (d) Respondent provided no explanation for failing to transfer me to a more desirable position.

  (e) Respondent provided no explanation for subjecting me to a hostile work environment because of my sex and/or disability and/or sex discrimination complaints and/or my seeking reasonable accommodations for my disability.

  (f) Respondent provided no explanation for failing to remedy or prevent the sex and disability discrimination and retaliation against me.

C. 1. Statutes and Bases for Allegations

I believe that Respondent has discriminated against me based on my sex (female) and my disability (including history of and regarded as) and retaliated against me based on my sex discrimination complaints and my seeking reasonable accommodations for my disability, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq. ("Title VII"), Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, et seq. ("NJLAD"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq. ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, et seq. ("PFPO"), as set forth herein.