## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CAROLYN PRAGER**<br>Philadelphia, PA 19102<br><br>*Plaintiff,*<br><br>v.<br><br>**LABCORP**<br>531 S. Spring Road<br>Burlington, NC 27215<br><br>and<br><br>**LABORATORY CORPORATION OF**<br>**AMERICA HOLDINGS**<br>531 S. Spring Road<br>Burlington, NC 27215<br><br>and<br><br>**LAB. CORP. OF AMERICA HOLDINGS**<br>531 S. Spring Road<br>Burlington, NC 27215<br><br>*Defendants.* | **CIVIL ACTION NO. 23-23413**<br><br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

### I.    INTRODUCTION

Plaintiff, Carolyn Prager ("Plaintiff"), brings this action against her former employers, LabCorp, Laboratory Corporation of America Holdings, and Lab. Corp. of America Holdings (collectively "Defendants") for discriminating against Plaintiff based upon her sex and disability and retaliating against Plaintiff for her complaints of unlawful discrimination and exercise of her right to job-protected medical leave. Defendants' discriminatory and retaliatory conduct includes, without limitation, failing to select Plaintiff for open positions for which she was qualified,

1

subjecting Plaintiff to a hostile work environment, and terminating Plaintiff after nearly thirteen (13) years of dedicated service for false and pretextual reasons after she repeatedly complained of discrimination and retaliation and on the very day she returned from a medical leave of absence.

Defendants' discriminatory and retaliatory conduct violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Family Medical Leave Act, as amended, 29 U.S.C. §2601, *et seq.* ("FMLA"), the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD") and the New Jersey Family Leave Act, as amended, N.J.S.A. §34:11B-4, *et seq.* ("NJFLA"). In the alternative to the NJLAD claims, Plaintiff also pleads violations of the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA") and the Philadelphia Fair Practices Ordinance, as amended, Phila. Code §9-1101, *et seq.* ("PFPO").

Plaintiff seeks all damages, including economic loss, compensatory damages, liquidated damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate under applicable law.

## II.   **PARTIES**

1.     Plaintiff is an individual and a citizen of Pennsylvania.

2.     Plaintiff is female.

3.     At all relevant times, Plaintiff was "disabled" in that she suffered from an impairment, which substantially limited one or more of her major life activities, had a record of impairment and/or was regarded as having such impairment.

4.     Defendant LabCorp is organized under the laws of the State of Delaware and maintains a principal place of business at 531 Spring Road, Burlington, NC 27215.

5.     Defendant LabCorp is engaged in an industry affecting interstate commerce and

regularly does business in the State of New Jersey.

6.      Defendant Laboratory Corporation of America Holdings is organized under the laws of the State of Delaware and maintains a principal place of business at 531 Spring Road, Burlington, NC 27215.

7.      Defendant Laboratory Corporation of America Holdings is engaged in an industry affecting interstate commerce and regularly does business in the State of New Jersey.

8.      Defendant Lab. Corp. of America Holdings is organized under the laws of the State of Delaware and maintains a principal place of business at 531 Spring Road, Burlington, NC 27215.

9.      Defendant Lab. Corp. of America Holdings is engaged in an industry affecting interstate commerce and regularly does business in the State of New Jersey.

10.     Defendants collectively maintain and operate offices located in New Jersey.

11.     At all relevant times, Plaintiff was employed within Defendants' Northeast Division which is based in Raritan, NJ.

12.     At all relevant times, Plaintiff primarily worked out of the Defendants' offices located at 69 First Avenue, Raritan, NJ 08869 as well as in Philadelphia where she lives.

13.     During her employment with Defendants, particularly during the last approximately five (5) years of her employment with Defendants, Plaintiff frequently worked in Philadelphia, both from her home office and elsewhere throughout Philadelphia County, on behalf of Defendants.

14.     At all times material hereto, Defendants' operations were substantively consolidated.

15.     Defendants are, for purposes of Plaintiff's employment and at all times material

thereto, interconnected such that they are considered a "single" and/or "integrated" employer and/or enterprise.

16.     Defendants shared and collectively maintained business offices, policies, procedures and personnel.

17.     Defendants collectively caused the actions complained of herein.

18.     At all times material hereto, Defendants jointly employed Plaintiff.

19.     At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

20.     At all times material hereto, Defendants acted as "employers" within the meaning of the statutes which form the basis of this action.

21.     At all times material hereto, Defendants employed fifty (50) or more employees.

22.     At all times material hereto, Plaintiff was an "employee" of Defendants within the meaning of the statutes which form the basis of this action.

### III.   <u>JURISDICTION AND VENUE</u>

23.     The causes of action that form the bases of this matter arise under Title VII, the ADA, the FMLA, the NJLAD, the PHRA and the PFPO.

24.     The District Court has jurisdiction over Count I (Title VII) pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

25.     The District Court has jurisdiction over Count II (ADA) pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1332.

26.     The District Court has jurisdiction over Count III (FMLA) pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1332.

27.     The District Court has jurisdiction over Count IV (NJLAD) pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1332.

28.     The District Court has supplemental jurisdiction over Count V (NJFLA) pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1332.

29.     The District Court has jurisdiction over Count VI (PHRA, pled in the alternative) pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1332.

30.     The District Court has jurisdiction over Count VII (PFPO, pled in the alternative) pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1332.

31.     Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within this District.

32.     On or about June 1, 2023, Plaintiff filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") complaining of the acts of discrimination alleged herein ("Complaint"). Attached hereto, incorporated herein, and marked as Exhibit "1", is a true and correct copy of Plaintiff's Complaint (with personal identifying information redacted).

33.     On October 3, 2023, the EEOC issued Plaintiff a Notice of Right to Sue regarding her Charge. Attached hereto, incorporated herein, and marked as Exhibit "2", is a true and correct copy of this notice.

34.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     <u>FACTUAL ALLEGATIONS</u>

35.     Plaintiff was hired by Defendants on or around June 27, 2005.

36.     Plaintiff last held the position of Senior Marketing Executive.

37.     Plaintiff last reported to Stephanie Hanshaw ("Hanshaw") (female), Regional Manager Business Development.

38.     Hanshaw reported to Kenneth Ryker ("Ryker") (male), Associate Vice President, Area Business Development.

39.     Ryker reported to Carl Epple ("Epple") (male), Vice President Southern Subdivision.

40.     Epple reported to Bill Haas ("Haas") (male), Senior Vice President, Northeast Division.

41.     Defendants have an underrepresentation of female employees, especially in upper-level positions.

42.     In or about October 2017, Plaintiff began reporting to Ryker.

43.     Ryker had no role in Plaintiff being hired at Defendants.

44.     Plaintiff expressed desire to grow in her position and be promoted.

45.     In 2019, Defendants failed to transfer Plaintiff to a Senior Marketing Executive position.

46.     The Senior Marketing Executive position was more desirable and included an opportunity for greater revenue, growth, and compensation, compared to Plaintiff's role at the time.

47.     Plaintiff was qualified for the Senior Marketing Executive position.

48.     Ryker told Plaintiff not to apply for the position.

49.     Ryker told Plaintiff he had already selected who he wanted for the position.

50.     Ryker promoted Paul Klein ("Klein") (male) to the Senior Marketing Executive position.

51.     Klein was promoted to the position despite Klein having had only been employed by Defendants for six (6) months and having held a lower-level position than Plaintiff held.

52.     Plaintiff received no explanation, including selection criteria, as to why Plaintiff was not transferred to the Senior Marketing Executive position, or why a less qualified male employee was promoted instead.

53.     Plaintiff was assigned less desirable accounts and territories, while male employees, including Klein, were assigned more desirable accounts and territories.

54.     Plaintiff was not given a legitimate, non-discriminatory explanation as to why she was given less desirable accounts and territories compared to similarly situated male employees.

55.     Ryker told Plaintiff that he would rebalance the accounts and territories, but it never happened.

56.     In March 2020, Plaintiff applied for the posted Assistant Manager position.

57.     In March 2020, following the above, in a meeting with Ryker, Defendants failed to promote Plaintiff to Assistant Manager.

58.     The stated reason was that Defendants were no longer hiring an Assistant Manager.

59.     In 2020, Plaintiff began reporting directly to Hanshaw and indirectly to Ryker.

60.     Hanshaw had no role in Plaintiff being hired at Defendants.

61.     Plaintiff suffers from serious medical conditions, including, without limitation, intermittent benign paroxysmal positional vertigo and neurological issues.

62.     Plaintiff's serious medical conditions constitute disabilities.

63.     Ryker was aware of Plaintiff's disabilities.

64.     Hanshaw was aware of Plaintiff's disabilities.

65.     Ryker and Hanshaw were aware that Plaintiff's disabilities required Plaintiff to take certain days off from work due to symptoms and treatment of the same.

66.     In addition to Plaintiff's own disabilities, Plaintiff exercised her right to leave to care for her father who suffered from a serious health condition in or around March and April 2021.

67.     In or about July 2021, in a meeting with Hanshaw, Plaintiff complained that Klein (male) had been assigned more desirable accounts and territories than Plaintiff had been assigned, while Plaintiff was assigned less desirable accounts and territories, and that, despite Ryker's statements that he would rebalance the accounts and territories, the same had never happened. Plaintiff stated that having less desirable accounts and territories negatively impacted her ability to hit her quota numbers.

68.     In response, Hanshaw stated that she would try to correct the issue as soon as possible.

69.     Between September and November 2021, in conversations with Hanshaw, when Plaintiff asked for an update regarding the rebalanced accounts and territories, she told Plaintiff that she had spoken with Ryker, and Ryker stated that not all territories were created equal, and that Ryker refused to rebalance the accounts and territories.

70.     On November 8, 2021, in a phone call with Hanshaw, Defendants told Plaintiff that she had not hit her quota numbers for three (3) out of four (4) months.  Plaintiff stated that there were multiple Senior Marketing Executive employees who had not hit their quota numbers for the same number of months.

71.     In response, Hanshaw told Plaintiff that Ryker told her to have this talk with Plaintiff, and that she was the only employee not hitting quota in this division.  Hanshaw asked Plaintiff to create a target list and plan to increase numbers.

72.     On November 12, 2021, in an email to Hanshaw, Plaintiff provided Defendants with the requested target list and plan that she had created to increase numbers.

73.     Hanshaw told Plaintiff that she understood that certain of Plaintiff's accounts would not generate revenue or help hit quota.

74.     In 2021, despite the less desirable territories and accounts Plaintiff was assigned, she exceeded her book of business quota in eight (8) out twelve (12) months at one hundred percent (100%), with five (5) of those months being over one hundred four percent (104%).

75.     Nevertheless, Plaintiff's performance was unjustly criticized by Defendants.

76.     On January 17, 2022, in a phone call with Hanshaw, Plaintiff was placed on a Performance Improvement Plan ("PIP").

77.     Plaintiff's performance did not warrant a PIP.

78.     The PIP was scheduled to last ninety (90) days.

79.     The PIP contained goals that were unfeasible to complete in the timeframe provided.

80.     Hanshaw told Plaintiff that placing her on the PIP was Ryker's decision.

81.     During the January 17th phone call, Plaintiff stated that there were multiple employees who had not hit their numbers for several months. In response, Hanshaw stated that Plaintiff was the only employee who had not hit their numbers.

82.     During the January 17th phone call, Plaintiff reiterated that she had been assigned less desirable accounts and territories, which negatively impacted her ability to hit quota numbers, while male employees, such as Klein, had been assigned more desirable accounts and territories.

83.     Defendants placed Plaintiff on a PIP because of her sex and/or her disability.

84.     Male and/or nondisabled employees were not placed on a PIP.

85.     Plaintiff received no explanation, including the criteria, as to why she was placed on a PIP while male and/or nondisabled employees were not.

86.     On February 16, 2022, in a phone call with Judi Ahrikenchikh ("Ahrikenchikh") (female), Human Resources, Employee Relations, Plaintiff stated that she was placed on a PIP while other employees who had not hit their quota numbers were not.  Plaintiff complained that she had been assigned less desirable accounts and territories, which negatively impacted her ability to hit quota numbers, while male employees, such as Klein, had been assigned more desirable accounts and territories.

87.     Ahrikenchikh told Plaintiff that she would investigate her complaints.

88.     On February 16, 2022, following the above, in an email to Ahrikenchikh, Plaintiff complained of sex discrimination in connection with how she had been treated. Specifically, Plaintiff stated that Ryker had failed to transfer her to a more desirable territory, and told her that, instead of transferring her to the more desirable position, he had already selected a male KAE who had only been with the company less than 6 months.

89.     After Plaintiff complained of sex discrimination, she was treated in an increasingly hostile and dismissive manner, differently and worse than before she had engaged in protected activity and differently and worse than how noncomplaining employees were treated.

90.     On February 17, 2022, Plaintiff went out of work on an FMLA-protected medical leave of absence due to Defendants' treatment of her.

91.     From February 17, 2022 through May 8, 2022, Plaintiff was out of work on an FMLA-protected medical leave of absence.

92.     The forms that were completed and submitted in connection with Plaintiff's medical leave of absence stated that her symptoms included ongoing fatigue, anxious mood, and pelvic floor disfunction.

93.     In or around April 2022, Plaintiff received phone calls from employees who told her that Human Resources was investigating her complaints, and that Ryker had called Nicholas Villa ("Villa") (male), Key Account Executive, and asked if he would speak on Ryker's behalf if necessary.  Plaintiff was told that Ryker also called James Cusick ("Cusick") (male), Division Representative, and told him that Plaintiff spoke with Human Resources and, now that Human Resources was involved, Cusick may have to provide justification as to why his numbers were so low and that Cusick may need to be placed on a PIP if his numbers did not improve.

94.     On May 9, 2022, Plaintiff returned to work from her FMLA leave.

95.     Following her return from FMLA leave, Plaintiff was unjustly criticized, ignored, and treated in a demeaning manner.

96.     Plaintiff was not given leadership opportunities, while Klein (male) was.

97.     On May 31, 2022, in a meeting with Epple, Plaintiff stated that she was concerned that Ryker was retaliating against her for complaining of sex discrimination.

98.     In response, Epple stated that he would investigate her complaints.

99.     On June 1, 2022, Hanshaw went out of work on maternity leave, and Defendants assigned Plaintiff to directly report to Ryker, despite the complaints she made and despite having received no feedback regarding any potential investigation.

100.    On June 27, 2022, in a meeting with Epple which Plaintiff understood to be a follow-up meeting to the complaints from May 31, 2022, Epple criticized Plaintiff's poor sales numbers and repeatedly asked her why they dropped.

101.    In response, Plaintiff reiterated that she had been assigned less desirable accounts and territories, which negatively impacted her ability to hit quota numbers, while male employees, such as Klein, had been assigned more desirable accounts and territories.

102.    Plaintiff further stated that, even though other employees did not hit their quota numbers, she was the only employee who was placed on a PIP.

103.    In response, Epple stated that Cusick (male) was told in May 2022 that he may be placed on a PIP if his numbers did not improve, and he then resigned.

104.    Prior to being placed on a PIP, Plaintiff was never told that she might be placed on a PIP if numbers did not improve.

105.    Defendants have provided no explanation as to why male employees were warned before being placed on a PIP while Plaintiff was not.

106.    On June 27, 2022, following the above, in a phone call with Ahrikenchikh, Plaintiff stated that she was upset by the meeting that she had with Epple and the lack of follow-up regarding her complaints of discrimination and retaliation.

107.    In response, Ahrikenchikh stated that she did not know much about sales, and that Plaintiff had to get updates from Ryker and Epple regarding her concerns.  She stated that she was told that Plaintiff's territory had so much opportunity.

108.     When Plaintiff asked for documentation regarding the same, Ahrikenchikh refused to provide it.

109.     On June 28, 2022, in a meeting with Ryker, he criticized Plaintiff for complaining about him to Epple and Human Resources, including complaining that he was retaliating against Plaintiff, and told her that she should have gone directly to him with any issues she had.

110.     During the June 28th meeting, Ryker told Plaintiff that her PIP would be restarting on July 1, 2022.

111.     On or about June 29, 2022, in a phone call with Ahrikenchikh, Plaintiff stated that she was upset by the meeting that she had with Ryker, and that she was concerned about further retaliation from him since he criticized her for complaining about him, including having complained that he retaliated against Plaintiff.

112.     In response, Ahrikenchikh again told Plaintiff that she had to go to Ryker for any sales updates.

113.     On or about June 30, 2022, Plaintiff contracted COVID-19 and was out of work for approximately five (5) days.

114.     Plaintiff received no updates or any investigative report in connection with her sex discrimination and retaliation complaints.

115.     On or about July 11, 2022, Plaintiff began experiencing medical issues related to her disabilities which required her taking certain days off from work due to symptoms and treatment of the same.

116.     In or about July 2022, following the above, Plaintiff informed Ryker that her intermittent benign paroxysmal positional vertigo and neurology issues had worsened, and that she

needed time off from work to attend medical appointments and do required physical therapy treatments.

117.     In August 2022, Plaintiff was out of work several days due to her disability.

118.     On August 17, 2022, in a meeting with Ryker, Plaintiff was placed on a PIP, which was backdated to July 1, 2022.

119.     Plaintiff's performance did not warrant a PIP.

120.     The PIP was scheduled to last ninety (90) days.

121.     Defendants placed Plaintiff on a PIP because of her sex, disabilities, her FMLA leave, and/or her complaints of discrimination and retaliation.

122.     Male, nondisabled, noncomplaining, and/or employees who had not recently taken FMLA leave were not placed on a PIP.

123.     Plaintiff received no explanation, including the criteria, as to why she was placed on a PIP while male, nondisabled, noncomplaining, and/or employees who had not recently taken FMLA leave were not.

124.     On August 31, 2022, in a phone call with Ryker, Plaintiff stated that she would be requesting intermittent FMLA due to medical conditions and treatments.

125.     On September 1, 2022, in an email from Ryker, he asked Plaintiff questions about her intermittent FMLA leave and upcoming doctor's appointments.

126.     On September 20, 2022, Plaintiff was approved for intermittent FMLA due to her disability.

127.     Between September 20, 2022 and October 31, 2022, Plaintiff was out of work for several days in connection with her intermittent FMLA leave as an accommodation for her disability, of which Ryker was aware.

128.    In or about October 2022, in a phone call with Ryker and Hanshaw, Plaintiff again stated that she was continuing to have a difficult time reaching her quota due to the accounts and territory she was assigned.

129.    In response, Ryker stated that he would remedy the issue and follow up with Plaintiff.

130.    Defendants failed to remedy the issue, and no one followed up with Plaintiff regarding the same.

131.    On November 1, 2022, Plaintiff went out of work on an FMLA-protected medical leave of absence due to her disability.

132.    From November 1, 2022 through January 4, 2023, Plaintiff was out of work on a medical leave of absence.

133.    Plaintiff received short term disability benefits through Defendants during her medical leave.

134.    The forms that were completed and submitted in connection with Plaintiff's medical leave of absence stated that symptoms included ongoing fatigue, anxiety, overactive bladder, and chronic pain.

135.    On January 4, 2023, Plaintiff returned to work from her medical leave of absence.

136.    On January 4, 2023, in a phone call with Hanshaw, Ryker, and Mark Musser ("Musser") (male), Senior Employee Relations Partner, Defendants terminated Plaintiff's employment, effective immediately.

137.    The stated reason for termination was that Plaintiff did not complete the PIP.

138.    On January 6, 2023, in a phone call with Musser, Plaintiff stated that she had complained about Ryker's treatment of her, and how that differed from how male employees were treated, and that his treatment of her worsened after her complaints.

139.    In response, Musser stated that he did not know anything about her complaints, and that Plaintiff should have received a written summary from Ahrikenchikh.  Plaintiff stated that she had not received a written summary. In response, Musser stated that he would speak with Ahrikenchikh and get back to Plaintiff.

140.    On January 31, 2023, in a phone call with Musser, he stated that he was no longer able to discuss anything with Plaintiff since she was no longer an employee.  He said he spoke to Ahrikenchikh and she stated that she had provided some verbal updates to Plaintiff.

141.    Defendants terminated Plaintiff's employment the day that she returned to work from a medical leave of absence.

142.    Defendants terminated Plaintiff's employment because of her sex, her disability, her FMLA leaves, and/or her protected activity.

143.    Defendants subjected Plaintiff to a hostile work environment because of her sex, her disability, her FMLA leaves, and/or her protected activity.

144.    Defendants' stated reason for termination is false and pretext for unlawful discrimination and retaliation.

145.    Before reporting to Ryker, Plaintiff had no indication that her job was in jeopardy.

146.    Before reporting to Ryker, Plaintiff had no disciplinary or performance issues.

147.    Before Plaintiff engaged in protected activity, she consistently received Meet Expectations performance review ratings.

148.    Plaintiff was the only employee reporting to Hanshaw who was terminated effective January 4, 2023.

149.    Upon information and belief, Plaintiff was the only disabled employee reporting to Hanshaw.

150.    Upon information and belief, Plaintiff was the only employee reporting to Hanshaw who had sought reasonable accommodations for a disability.

151.    Upon information and belief, Plaintiff was the only employee reporting to Hanshaw who had exercised her right to FMLA-protected leave.

152.    Upon information and belief, Plaintiff was the only employee reporting to Hanshaw who had engaged in protected activity.

153.    At the time of Plaintiff's termination, the following employees, in addition to Plaintiff, reported to Hanshaw:

      a.    Ronald Root (male), Key Account Executive;

      b.    Jennifer Parker (female), Key Account Executive;

      c.    Kimberly Ostrofsky (female), Key Account Executive; and

      d.    Lisa O'Brien (female), Key Account Executive.

154.    Plaintiff was more qualified to perform these employees' positions.

155.    Defendants failed to remedy or prevent the discrimination and retaliation set forth herein.

156.    Plaintiff had no opportunity to remain employed with Defendants.

157.    Upon information and belief, as of Plaintiff's termination, there were open positions at Defendants for which Plaintiff was qualified but which Defendants failed to place Plaintiff into.

158.    Defendants replaced Plaintiff with David Marshall ("Marshall") (male).

159.    Upon information and belief, Marshall was nondisabled and had not engaged in protected activity.

160.    Plaintiff was more qualified to perform the job duties and responsibilities and manage direct reports than the male, noncomplaining, nondisabled employee who had not recently taken FMLA leave with whom Defendants replaced her.

161.    Defendants provided no explanation for subjecting Plaintiff to a hostile work environment.

162.    Defendants' discriminatory and retaliatory conduct and comments constitute a continuing violation.

163.    The retaliatory actions taken against Plaintiff after complaining of discrimination would have discouraged a reasonable employee from complaining about unlawful discrimination.

164.    Defendants' discriminatory and retaliatory conduct, as alleged herein, was severe or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

165.    Defendants' comments and conduct evidence a bias against female employees, disabled employees, employees who engage in protected activity and/or employees who exercise their rights under the FMLA.

166.    As a direct and proximate result of the sex discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

167.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

168.   Defendants acted with malice and/or reckless indifference to Plaintiff's protected rights, warranting the imposition of punitive damages.

## COUNT I – TITLE VII

169.   Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

170.   By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

171.   Said violations were especially egregious, intentional and done with malice and/or reckless indifference to Plaintiff's rights, warranting the imposition of punitive damages.

172.   As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

173.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until this Court grants the relief requested herein.

174.   No previous application has been made for the relief requested herein.

175.   Aside from a continuing violation hostile work environment, Plaintiff is not pursuing or seeking relief for any adverse actions that occurred prior to August 5, 2022 under Title VII.

## COUNT II – ADA

176.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

177.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

178.    Said violations were especially egregious, intentional and done with malice and/or reckless indifference to Plaintiff's rights, warranting the imposition of punitive damages.

179.    As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

180.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory acts unless and until the Court grants the relief requested herein.

181.    No previous application has been made for the relief requested herein.

182.    Aside from a continuing violation hostile work environment, Plaintiff is not pursuing or seeking relief for any adverse actions that occurred prior to August 5, 2022 under the ADA.

## COUNT III - FMLA

183.    Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

184.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the FMLA.

185.     Defendants' conduct was retaliatory and/or interfered with Plaintiff's rights under the FMLA.

186.     Said violations were willful, not in good faith, and Defendants did not have reasonable grounds to believe that their conduct was not in violation of the FMLA, warranting the imposition of liquidated damages.

187.     As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

188.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

189.     No previous application has been made for the relief requested herein.

## COUNT IV – NJLAD

190.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

191.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants violated the NJLAD.

192.     Members of upper management of Defendants had actual participation in, or willful indifference to, Defendants' unlawful conduct set forth herein.

193.     Said violations were especially egregious and warrant the imposition of punitive damages.

194.     As a direct and proximate result of Defendants' violations of the NJLAD, Plaintiff has suffered the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

195.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

196.     No previous application has been made for the relief requested herein.

197.     Aside from a continuing violation hostile work environment, Plaintiff is not pursuing or seeking relief for any adverse actions that occurred prior to December 29, 2021 under the NJLAD.

**COUNT V – NJFLA**

198.     Plaintiff incorporates herein by reference the above paragraphs as if set forth herein in their entirety.

199.     By committing the foregoing acts of retaliation against Plaintiff, Defendants violated the NJFLA.

200.     Defendants retaliated against Plaintiff for exercising her rights under the NJFLA, which includes subjecting Plaintiff to a hostile work environment, failing to place Plaintiff into open positions for which she was qualified, and terminating Plaintiff's employment for false and pretextual reasons.

201.     Said violations were especially egregious and warrant the imposition of punitive damages.

202.     As a direct and proximate result of Defendants' violations of the NJFLA, Plaintiff has suffered the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

203.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory acts unless and until this Court grants the relief requested herein.

204.     No previous application has been made for the relief requested herein.

205.     Aside from a continuing violation hostile work environment, Plaintiff is not pursuing or seeking relief for any adverse actions that occurred prior to December 29, 2021 under the NJFLA.

## COUNT VI – PHRA
### (pled in the alternative)

206.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

207.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PHRA.

208.     Plaintiff's sex, disability and/or protected activity were motivating and/or determinative factors in the adverse actions taken against Plaintiff.

209.     As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorneys' fees and costs.

210.     Plaintiff is now suffering and may continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

211.    No previous application has been made for the relief requested herein.

212.    Aside from a continuing violation hostile work environment, Plaintiff is not pursuing or seeking relief for any adverse actions that occurred prior to December 3, 22 under the PHRA.

<u>**COUNT VII – PFPO**</u>
<u>**(pled in the alternative)**</u>

213.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

214.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PFPO.

215.    Plaintiff's sex, disability and/or protected activity were substantial, motivating, and/or determinative factors in the adverse actions taken against Plaintiff.

216.    Defendants acted willfully and/or intentionally with malice and/or reckless indifference to Plaintiff's federally protected rights, and Defendants' conduct was especially egregious, warranting the imposition of punitive damages.

217.    As a direct and proximate result of Defendants' violations of the PFPO, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorney's fees and costs.

218.    Plaintiff is now suffering and may continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

219.    No previous application has been made for the relief requested herein.

220.    Aside from a continuing violation hostile work environment, Plaintiff is not pursuing or seeking relief for any adverse actions that occurred prior to August 5, 2022 under the PFPO.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' unlawful conduct, and specifically prays that this Court grant the following relief to Plaintiff by:

(a)    declaring the acts and practices complained of herein to be in violation of Title VII, the ADA, the FMLA, the NJLAD and the NJFLA (or in the alternative, to be in violation of the PHRA and the PFPO);

(b)    enjoining and permanently restraining the violations alleged herein;

(c)    entering judgment against Defendants and in favor of Plaintiff in an amount to be determined;

(d)    awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(e)    awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendants' unlawful conduct;

(f)    awarding punitive damages to Plaintiff under Title VII, the ADA, the NJLAD, the NJFLA and the PFPO;

(g)    awarding liquidated damages to Plaintiff under the FMLA;

(h)    awarding Plaintiff such other damages as are appropriate under Title VII, the ADA,

the FMLA, the NJLAD, the NJFLA, the PHRA, and the PFPO;

(i)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(j)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**

By: _____

Kevin Console, Esquire
Laura Mattiacci, Esquire
Holly W. Smith, Esquire
110 Marter Avenue, Suite 502
Moorestown, New Jersey 08057
Phone: (215) 545-7676

Dated: 4/10/2024     *Attorney for Plaintiff, Carolyn Prager*